

10/18/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **GRADY L. SPARKS, III** | § | Case No. 06-10012 |
| | § | |
| Debtor | § | Chapter 13 |

## MEMORANDUM OF DECISION

This matter is before the Court to consider confirmation of the Debtor's First Amended Chapter 13 Plan proposed by Grady L. Sparks, III ("Debtor"), the Debtor in the above-referenced case. Ronald E. Stadtmueller, Chapter 13 Trustee, objected to the confirmation of the Plan on the grounds that the Debtor is not applying all of his projected disposable income in the applicable commitment period of five years to make payments to unsecured creditors, in contravention of 11 U.S.C. §1325(b)(1)(B).[1] At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

## Background

The Debtor, Grady L. Sparks, III, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code and seeks to confirm his First Amended Chapter 13 Plan

---

[1] Other confirmation objections raised by the Trustee were resolved prior to the hearing.

[2] This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

which, from the total plan base of $32,700.00,[3] proposes to pay a total of $9,227.38 to creditors with allowed general unsecured claims.[4] Because this single Debtor admittedly has a current monthly income which, when extrapolated into an annual amount, exceeds the median family income for single-earner households in this state,[5] 11 U.S.C. §1325(b)(3) mandates that his deductions of reasonable and necessary expenses from his current monthly income to determine his disposable income are subject to certain standards set forth in §707(b)(2). In the absence of the allowance of certain expenses not contemplated by the standards issued by the Internal Revenue Service which are incorporated into §707(b)(2)(A), that disposable income calculation, as calculated through Part V of Form B22C,[6] would require a monthly payment to unsecured creditors of $434.12 for the 60-month period, for a total sum of $26,047.20, and the Trustee bases his disposable income objection upon that calculation. However, the Debtor asserts that his monthly disposable income is actually significantly lower due to additional monthly expenses which he asserts are reasonable and necessary for his maintenance and support

---

[3] The Debtor's plan proposes to pay the sum of $545.00 per month for the applicable commitment period of five years.

[4] The Trustee actually projects in his confirmation report that the plan would generate $9,704.62 for general unsecured creditors — a 53.02% dividend based upon the Debtor's $18,305 estimate of his total general unsecured debt.

[5] The Debtor's current monthly income of $4,174.83, which extrapolates into an annual income of $50,097.96, exceeds the $33,280.00 which is currently recognized as the applicable median family income for one-earner households in Texas.

[6] Ex. P-2. New Official Form B22C is utilized in Chapter 13 cases to implement the provisions of 11 U.S.C. §§1325(b)(3) and (b)(4).

and can be legitimately deducted pursuant to 11 U.S.C. §1325(b)(3).

## Discussion

In the context of considering confirmation of a Chapter 13 plan proposed by a debtor who is not engaged in business, 11 U.S.C. §1325(b) now provides, in relevant part, that:

> (b)(1)  [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
> > (A)  the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> > (B)  the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2)  For purposes of this subsection, "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended —
> > (A)(i) for the maintenance or support of the debtor or a
> > > dependent of the debtor . . . ;[7]

Because the Debtor's current monthly income exceeds this state's median family income

---

[7] If a debtor is engaged in business, §1325(b)(2)(B) also deletes from "disposable income" any income which must be expended "for the payment of expenditures necessary for the continuation, preservation, and operation of such business."

for a comparable household,[8] the following provisions of §1325(b)(3) are invoked:

> (3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—
> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
> (C) in the case of a debtor in household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

Thus, as a result of the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the former system of determining the reasonableness and necessity of expenditures in a calculation of disposable income through an evaluation of Schedules I and J has been supplemented by the required overlay of the standards otherwise utilized in §707(b)(2) to determine whether a presumption of abuse exists in a Chapter 7 case. Such "means test" standards are implemented through the use of Official Form B22C and are now used in the Chapter 13 context to gauge the necessity and reasonableness of expenses in specified categories by comparing them to

---

[8] *See supra* note 5.

financial standards devised by the Internal Revenue Service in those categories. In applying these §707(b) standards only to Chapter 13 debtors whose current monthly income exceeds the median income of persons in their state, Congress implicitly recognized that, without the invocation of appropriate limitations, a higher level of monthly income enjoyed by a Chapter 13 debtor would likely be consumed in a lifestyle characterized by a higher level of monthly expenditures. Thus, in an effort to insure that a significant payment to unsecured creditors would actually be made by those persons whose monthly income reflected such an ability, Congress incorporated the §707(b) standards into §1325(b)(3) as a statutory ceiling for those enumerated expense categories, thereby precluding the allowance of any improper discretionary spending by higher income debtors in Chapter 13.[9] This process, as implemented through the use of Official Form B22C, will produce a calculation of disposable income which in most instances will become the amount of "projected disposable income" required for plan confirmation under §1325(b)(1)(B), unless the projected amount is increased by the Court as the result

---

[9] Of course, the result the Congress is attempting to produce by the statutory invocation of the IRS standards is exactly the goal which this and other courts have sought to reach in pre-BAPCPA rulings on disposable income in Chapter 13 cases. *See, e.g., In re Johnson*, 241 B.R. 394, 399 (Bankr. E.D. Tex. 1999) quoting *In re Gonzales*, 157 B.R. 604 (Bankr. E.D. Mich. 1993) ["Thus the proper methodology is to aggregate all expenses projected by the debtor which somewhat more discretionary in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which, for lack of a better term, will be called "discretionary spending."...If the discretionary expenses in the aggregate allow the Debtors to exceed their basic needs, including a reasonable reserve for recreation and exigencies (the reasonable "cushion"), then their plan cannot be confirmed."] *Id.* at 608-09 (citations omitted). Obviously the Congress was either ill-informed or unimpressed by such judicial efforts.

of a more detailed examination of the reasonableness of the debtor's expenditures[10] or the projected amount is reduced because the debtor demonstrates a substantial change in circumstances which decreases the availability of future income.[11]

Yet consideration of the particular circumstances of a higher income Chapter 13 debtor has not been completely precluded. In determining amounts reasonably necessary to be expended under §1325(b)(2) "in accordance with subparagraphs (A) and (B) of section 707(b)(2)," a higher income Chapter 13 debtor may demonstrate:

> (i) . . . special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances ~~that~~ [sic] justify additional expenses or adjustments of current monthly income *for which there is no reasonable alternative*.
>
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide–
>
> > (I) documentation for such expense or adjustment to income; and

---

[10] This Court has already experienced anomalies in this process in cases in which the B22C calculation has produced a zero or a negative number but which involve debtors who admittedly have disposable income available for distribution to unsecured creditors. In the opinion of this Court, the phrase "in accordance with" as utilized in §1325(b)(3) means that the standards imposed by that subsection cannot be violated during the determination of whether proposed expenditures are reasonable and necessary. However, the fact that a debtor proposes a plan with a payment amount to unsecured creditors equivalent to the B22C calculation does not necessarily constitute compliance with the §1325(b)(1)(B) standard and does not preclude the Court from engaging in a further evaluation of the reasonableness of the debtor's expenses.

[11] As courts construing the statutory changes in this area have already concluded, "'projected disposable income' under section 1325(b)(1)(B) necessarily refers to income that the debtor reasonably expects to receive during the term of the plan," *In re Hardacre*, 338 B.R. 718, 723 (Bankr. N.D. Tex. 2006), and the *projected* disposable income may vary from the disposable income calculation if "the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." *In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006). *See also, In re Grady*, 343 B.R. 747 (Bankr. N.D. Ga. 2006) [court must consider the change in circumstances caused by joint debtor's recent inability to work due to medical problems in determination of the debtors' projected disposable income].

>> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. §707(b)(2)(B) (emphasis added).[12]  Thus, the incorporation of the means test standards into the disposable income calculation established by §1325(b) allows an affected higher income Chapter 13 debtor to establish the existence of "special circumstances" which justify the recognition and allowance of additional categories of expense or an adjustment to the calculation of current monthly income.[13]

It is under this "exception" to the means test standards that the Debtor seeks the allowance of an additional $608 per month in the following expense categories: rent – $203; and transportation expenses – $405.  In an attempt to fulfill his evidentiary obligation under §707(b)(2)(B)(ii) and (iii), the Debtor presented testimony as well as documentary evidence.  As to the rental expense, the Debtor admitted that he is a single man with a 3-bedroom apartment in Orange.[14]  He testified that his actual monthly rent is

---

[12] Since §707(b)(2)(B)(iv) relates solely to the rebuttal of the presumption of abuse in a Chapter 7 case, it is irrelevant to a consideration of disposable income in a Chapter 13 case.

[13] In the context of a Chapter 7 case, the establishment of these special circumstances would rebut the presumption of abuse which would otherwise preclude the availability of relief under Chapter 7.

[14] The Debtor testified that, as of the time of his initial rental, there were no 2-bedroom apartments available and that he has not checked back with management regarding such availability since he enjoys the extra room.  He made no reference to seeking a 1-bedroom apartment nor did he indicate whether any utilities were provided in conjunction with the lease.

$695 — $203 per month over the $492 allowed under the B22C standards — and that he seeks approval of this "special circumstance" since he is still bound by the apartment lease, the apartment is a bit larger than normally available in the area, and it has an enclosed garage for his vehicle. As to his transportation expenses, the Debtor seeks recognition of his actual auto insurance premium of $195 per month, although he acknowledged that it would soon be lowered from $195 to $167 per month. As to his other transportation expenses regarding his 2000 Chevrolet 1500-series truck, the Debtor seeks approval of an additional $210 per month over the $242 authorized under the B22C standards. He testified that his current employment required a round-trip of 40 miles per day and that he often traveled to see family members in Vidor and Port Neches. He admitted that almost $100 of the requested monthly charge is for annual registration fees, tires, periodic oil changes and other repairs. No documentation was tendered to the Court regarding the automotive expenses.[15]

While the use of the §707(b)(2) standards in calculating a higher income debtor's disposable income in Chapter 13 includes the opportunity to establish the existence of "special circumstances," this exclusion is not as flexible as this debtor pretends. Indeed the availability of these expense increases is considerably more restrictive than proving that a particular expense was "reasonably necessary" under the pre-BAPCPA standard.

---

[15] The Court must also note that, in Schedule J listed as an "itemized personal expense," the Debtor seeks approval of $40 in monthly expenses to repair a non-operating second car which apparently is not recognized nor treated under Schedule B22C.

This is demonstrated by the fact that §727(b)(2)(B)(i) specifically mentions a serious medical condition or a call to active duty into the military as examples of the type of special circumstance that the subsection contemplates as justifying additional expenses or income adjustments. While those examples are undoubtedly intended as illustrative rather than exclusive, they depict the type of unanticipated development which leaves a debtor with *no reasonable alternative* but to incur the expense or accept the income adjustment. Special circumstances for the purposes of §727(b)(2)(B) or §1325(b)(3) are certainly not demonstrated merely by showing that the Debtor has incurred these expenses in the past. This exception is not available to justify the approval of expenses incurred merely at a debtor's discretion, the impact of which can be minimized, if not eliminated, through careful consideration of the remedies available to debtors under the Bankruptcy Code. Instead this exception to the parameters of acceptable expenses must be strictly construed to allow only those expenses which are truly unavoidable to the debtor. It should be strictly construed so as to coerce the higher income debtor in a Chapter 13 proceeding to adjust his living expenditures to an acceptable level. It should not be viewed as a panaceanic pathway by which a higher income debtor may achieve the justification of excessive spending patterns which created the necessity to seek Title 11 relief. To interpret it otherwise would undermine some major objectives of the BAPCPA amendments in this area — to preclude the allowance of any improper discretionary spending by higher income debtors in Chapter 13 and to enhance distributions to

unsecured creditors as a result.

The Debtor has failed in this instance to demonstrate the existence of special circumstances which warrant the approval of these additional expenses. These expenses did not arise from unanticipated developments. The Debtor has not shown that he lacks any reasonable alternative to the option of incurring these expenses on a monthly basis. Instead the Debtor requests that the Court simply endorse his pre-petition decision-making and relieve him of the burden of having to comply with the expense standards now imposed upon higher income debtors by §1325(b)(3). The Court cannot do so under these circumstances.[16]

Accordingly, the Court concludes that the objection of the Chapter 13 Trustee must be sustained and that confirmation of the Debtor's Chapter 13 plan should be denied. In light of this initial denial of confirmation, the Debtor shall file a new Chapter 13 plan within thirty (30) days of the date of this Order and, in the event that the Debtor fails to do so, absent a further order of the Court extending such deadline for cause shown, or in the event that the Debtor thereafter fails to confirm such new Chapter 13 plan upon consideration by this Court under its normal procedures, this Chapter 13 case shall be dismissed, pursuant to §349(a) of the Bankruptcy Code, without further notice or hearing and with prejudice to the rights of the Debtor to file a subsequent petition under

---

[16] It also appears as if other expense categories of the Debtor exceed that level which could be fairly characterized as reasonable and necessary. However, in light of the ruling, the Court need not reach such issues.

any chapter of Title 11, United States Code, for a period of one hundred twenty (120) days from the entry of the order of dismissal.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[17] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 10/18/2006

_____
THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[17] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.